RECEIVED
By USBC Portland at 1:47 pm, 05/12/2026

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF MAINE**<br><br>**In re:**<br>**TERRY L. GREENIER, Debtor** | **CHAPTER 7**<br>**CASE NO. 25-10013** |

**OPPOSITION OF CREDITOR SHERRI L. DEMERCHANT TO TRUSTEE'S OBJECTION TO PROOF OF CLAIM NO. 1 AND ALTERNATIVE REQUEST FOR LEAVE TO CONDUCT RULE 2004 EXAMINATION**

Creditor, SHERRI L. DEMERCHANT ("Creditor"), an individual now of Presque Isle, Aroostook County, Maine, hereby files this Opposition to the Chapter 7 Trustee's Objection to Proof of Claim No. 1 (the "Objection").

In the event this Court does not overrule the Objection on the pleadings, Creditor alternatively requests leave to conduct a Rule 2004 examination of the Debtor for reasons described hereinafter.

In support thereof, Creditor respectfully states as follows:

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

1. Prior to the Debtor's petition for Chapter 7 bankruptcy relief, Creditor was employed by T & G, LLC (operating under its assumed name, I Care Pharmacy), from **August 8, 2023**, to **August 30, 2024**.

2. The Debtor was the sole Member, owner, and principal decision-maker for the business.

3. During Creditor's employment, the Debtor exercised pervasive and exclusive operational control over the business. Specifically, the Debtor personally hired the Creditor, established the Creditor's work schedule, had the final say over the company's payroll operations, and had unilateral control over the company's employment policies.

4. Describing these policies was an Employee Handbook, promulgated by the Debtor and with a specific PTO clause adopted effective December 31, 2013, which stated that employees are entitled to the payout of all accrued, unused Paid Time Off ("PTO") upon the termination of their employment.

5. At the time of Creditor's separation, Creditor had accrued 168.5 hours of unused PTO. Despite the clearly and specifically defined company policy regarding PTO payment upon termination.

6. When Creditor inquired about the unpaid PTO, the Debtor did not direct Creditor to the LLC or claim a lack of personal authority. Instead, the Debtor communicated directly with the Creditor via text message in September 2024, stating that he was personally "trying to figure it out" regarding her payment, before cutting off communication with the Creditor entirely.

7. On January 13, 2025, the Debtor filed a voluntary petition for relief under Chapter 7. On the petition, the Debtor listed T & G, LLC, as an "FDBA" (Formerly Doing Business As) trade name, but not a business entity in which he held an ownership interest. At the time of filing, the LLC remained an active corporate entity; however, it has since been administratively dissolved.

8. The Debtor did not schedule the Creditor or the wage obligation on his initial petition. As a result, the Creditor received no notice of the bankruptcy filing or the § 341 Meeting of Creditors held on February 18, 2025. The Creditor was unaware of the meeting and thus did not have the opportunity to attend and examine the Debtor regarding the wage obligation or the relationship between his personal and business finances, which may or may not expose the Debtor to personal liability with respect to the wage claim upon further investigation.

9. Through counsel, the Creditor subsequently discovered the instant bankruptcy proceeding independently via PACER and timely filed Proof of Claim No. 1 on March 18, 2025. In accordance with Federal Rule of Bankruptcy Procedure 3001(c), the Creditor attached the governing PTO clause from the Employee Handbook and the direct text message communications between the Creditor and the Debtor as exhibits thereto; the said Proof of Claim No. 1 and attachments are incorporated herein by reference.

10. Following the § 341 meeting, the Trustee filed a "No Distribution" report on March 21, 2025, due to a clerical error regarding funds received March 18, 2025, and the case was closed on April 21, 2015; the case was later reopened on May 21, 2025.

11. The Trustee filed the instant Objection on April 9, 2026, asserting that any PTO obligation is solely a liability of T & G, LLC, and not a liability of the Debtor's personal bankruptcy estate.

12. Prior to filing the Objection to Claim No. 1, Trustee contacted Creditor's counsel by phone, stating that "$10,000 to $12,000" had become available in the bankruptcy estate, and offering the opportunity for Creditor to withdraw her claim based on the theory later set forth in Trustee's filed Objection.

13. Based on the funds available, the Creditor opted not to withdraw Claim No. 1, and also not to correct the claimed amount from $12,800 to $13,480, as the difference owed upon proper recalculation (168.50hrs. x $80.00/hr. = $13,480) would be unavailable for payment from the Debtor's bankruptcy estate according to Trustee.

14. Creditor further declined to update Claim No. 1 to include "a reasonable rate of interest, an additional amount equal to twice the amount of those unpaid wages and that accrued vacation pay as liquidated damages and costs of suit, including a reasonable attorney's fee" under 26 M.R.S. § 626 due to the same lack of collectability based on Trustee's statements.

## LEGAL ARGUMENTS

**Creditor's Properly Filed Proof of Claim Constitutes Prima Facie Evidence of its Validity and Amount.**

15. Under Federal Rule of Bankruptcy Procedure 3001(f), a proof of claim executed and filed in accordance with the applicable rules constitutes *prima facie* evidence of the validity and amount of the claim. Creditor timely filed Proof of Claim No. 1 utilizing the official form and complied fully with Fed. R. Bankr. P. 3001(c) by attaching the governing PTO policy from the Employee Handbook and the corroborating text admissions from the Debtor. Consequently, Proof of Claim No. 1 enjoys *prima facie* validity as a matter of law.

16. This *prima facie* validity establishes a strict burden-shifting framework. To overcome the presumption of validity, the objecting party bears the burden of producing substantial evidence of equal probative force to rebut the claim. *In re Tracey*, 394 B.R. 635, 639 (1st Cir. BAP 2008); *In re Hemingway Transp., Inc.*, 993 F.2d 915, 925 (1st Cir. 1993). The Trustee's Objection relies entirely on the formalistic premise that the debt belongs exclusively to the LLC, without producing any factual evidence to contradict the Debtor's individual employer liability under the economic realities test or common law veil-piercing doctrines, further discussed hereinafter. Because a mere formal objection unsupported by substantial, probative evidence is insufficient to rebut a claim's *prima facie* validity, Proof of Claim No. 1 must be allowed as filed.

**The Debtor is Personally Liable for the Unpaid PTO Under Maine Law and the "Economic Realities" Test.**

17. The Trustee's Objection relies entirely on the premise that the unpaid wages are exclusively a corporate debt of T & G, LLC, shielding the Debtor's personal estate from liability. This ignores both the operational realities of the Debtor's business and the strict protections afforded to employees under Maine law with respect to wages earned and owed.

18. First, under the Maine wage payment statute, accrued PTO is legally indistinguishable from earned wages. The statute expressly dictates that "[w]henever the terms of employment or the employer's established practice includes provisions for paid vacations, vacation pay on cessation of employment has the same status as wages earned." 26 M.R.S. § 626. Because the Employee Handbook described the company's policy of paying out PTO upon termination, the Creditor's claim is a statutory claim for unpaid wages.

19. Second, the Debtor is personally liable for these unpaid wages as an "employer." Under Maine law, an "employer" is broadly defined to include an "individual, partnership, association, corporation, legal representative, trustee, receiver, trustee in bankruptcy..." 26 M.R.S. § 591(2). To determine individual liability for corporate officers and owners under state wage laws, courts routinely apply the "economic reality" test. *Bradford v. Naples Causeway Dev., LLC*, No. 2:21-cv-00015-NT, 2022 WL 1523035, at *4 (D. Me. May 13, 2022); *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 112 (D. Me. 1998).

Docusign Envelope ID: 25F61B4E-B460-8E4C-81D1-3AD2C1EEAB8D


20. Furthermore, in assessing statutory employment definitions, this Court relies strictly on the "economic realities of the relationship" rather than "contractual terminology or traditional common law concepts." *Bolduc*, 35 F. Supp. 2d at 112. Because the economic realities test elevates substance over form, corporate labels and entity structures cannot shield an individual from being defined as an employer where they exercise significant operational control over the business and the terms of compensation. *Id.*; *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998).

21. Facts relevant to the inquiry are: (1) "the significant ownership interest of the corporate officers; (2) their operational control of significant aspects of the corporation's day to day functions, including compensation of employees; and (3) the fact that they personally made decisions to continue operating the business despite financial adversity and the company's inability to fulfill its statutory obligations to its employees." *Bradford*, 2022 WL 1523035, at *4 (quoting *Baystate*, 163 F.3d at 677–78).

22. While the economic realities test originated in federal jurisprudence to determine employer liability under the Fair Labor Standards Act (FLSA), Maine courts have explicitly adopted and applied this identical standard to adjudicate state wage disputes. The Maine Supreme Judicial Court, as well as federal courts applying Maine law, consistently utilize the economic realities test to determine "employer" status under Maine's state wage payment statutes. *Dir. of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987) (adopting the federal economic realities test to evaluate employer status under Maine wage law based on the totality of circumstances rather than formalistic labels); *Bolduc*, 35 F. Supp. 2d at 112.

23. Consequently, although the Creditor's claim for unpaid PTO arises strictly under 26 M.R.S. § 626 rather than federal law, the economic realities test serves as the controlling standard to evaluate the Debtor's individual liability in this state-law context and should be considered by the Bankruptcy Court in the instant case.

24. Here, the Debtor was the sole Member of T & G, LLC, and exercised absolute operational control over the business. The Debtor personally hired the Creditor, set the Creditor's terms of employment, authored or ratified the Employee Handbook, and retained exclusive control over the company's payroll operations.

25. As evidenced by the Debtor's own personal text messages to the Creditor stating that he was "trying to figure it out" regarding her unpaid PTO, the Debtor acted as the ultimate financial decision-maker.

26. The Debtor's choice to list the entity as a personal "FDBA" trade name and not schedule his interest in T & G, LLC, while mainly an insignificant matter of form over substance, still operates as a relevant factual admission of his self-perceived control over the enterprise.

27. Because the Debtor exercised such unilateral and pervasive control over the Creditor's employment and compensation, as well as over every other aspect of the business operations of T & G, LLC dba I Care Pharmacy, the Debtor personally qualifies as an employer under the economic realities test and is individually liable for the statutory wage violation under 26 M.R.S. § 626.

**Alternatively, the Corporate Form Cannot Be Used to "Justify a Wrong."**

28. Even if this Court declines to impose direct statutory employer liability, Maine common law dictates that the corporate entity must be disregarded here. While Maine courts are generally cautious in disregarding the corporate form, they will do so "when necessary in the interest of justice" and whenever the corporate entity is "used to cover fraud or illegality, or to justify a wrong." *Maine Aviation Corp. v. Johnson*, 160 Me. 1, 5, 196 A.2d 748, 750 (1964) (quoting *Bonnar-Vawter, Inc. v. Johnson*, 157 Me. 380, 387–88, 173 A.2d 141, 145 (1961)).

29. Piercing the veil is strictly necessary in the interest of justice here because the sole Member cannot be permitted to use the LLC shield to justify a fundamental wrong: inducing employees to labor under promised compensation policies, only to evade paying their earned PTO wages through undercapitalization. Permitting the corporate shield to stand under these circumstances would directly "promote an injustice." *Id.*

30. To determine if this privilege has been abused, courts examine factors such as thin capitalization, commingling of assets, and the siphoning of funds by the dominant Member. *State v. Weinschenk*, 2005 ME 28, ¶ 19, 868 A.2d 200, 206.

31. In the instant case, the Debtor used the corporate form of T & G, LLC, to promulgate an Employee Handbook, inducing the Creditor's labor by promoting a compensation policy that involved the payout of accrued PTO upon employment termination. The Debtor then seemingly failed to adequately capitalize the entity to honor those wage obligations.

32. Recognizing the separate corporate existence of the LLC at this juncture would guarantee an unjust result. While the LLC was in force at the time the Debtor filed his bankruptcy petition, it has since been administratively dissolved. Consequently, the LLC is no longer a viable entity against which the Creditor can seek recourse. Permitting the Trustee to retroactively apply the dissolved LLC's corporate shield to defeat this claim would extinguish the Creditor's earned wages and leave the Creditor with nowhere else to turn to be made whole.

33. Sustaining the Objection would also establish a deeply inequitable precedent, effectively providing a roadmap for business owners to evade statutory wage obligations. It would signal that a sole Member can undercapitalize an LLC, induce labor with promises of accrued benefit payouts, and subsequently extinguish those liabilities by filing for personal bankruptcy while allowing the LLC to cease operations and become dissolved. Such an outcome would transform the corporate shield from legitimate business protection into a tactical mechanism for wage evasion, subverting Maine's sacred worker protections and leaving disenfranchised employees without any viable avenue for recovery.

**Request for Leave to Conduct Rule 2004 Examination.**

34. Should this Court find that the pleadings do not currently establish sufficient grounds to overrule the Objection, Creditor respectfully requests that the Court continue the Objection and grant Creditor leave to conduct discovery pursuant to Fed. R. Bankr. P. 2004.

Docusign Envelope ID: 25F61B4E-B460-8E4C-81D1-3AD2C1FEAB8D


35. Because the Debtor did not schedule the Creditor, the Creditor was precluded from appearing at the § 341 meeting, resulting in a wholly undeveloped factual record regarding the Debtor's operational control and corporate practices.

36. To definitively establish that Debtor had sufficient operational control over T & G, LLC, or that it was operated as an alter ego where the corporate privilege was abused, Creditor requires discovery into the Debtor's administration of the LLC's finances and business practices. By the Debtor's own admission in the prior referenced September 2024 text message exchange with Creditor, he was attempting to source funds ("trying to figure it out") regarding the Creditor's pay. Without the ability to trace the LLC's financial records, Creditor cannot determine if the Debtor was siphoning funds, leaving the LLC undercapitalized, or commingling assets prior to the bankruptcy filing.

37. Sustaining the Trustee's Objection at this juncture without allowing Creditor to examine financial records and practices would shield the Debtor's financial administration from judicial scrutiny. Therefore, Creditor requests the opportunity to examine the Debtor and compel the production of the LLC's and the Debtor's relevant financial records prior to any final adjudication of Claim No. 1.

## PRAYER FOR RELIEF

WHEREFORE, Creditor Sherri L. DeMerchant respectfully requests that this Court:

A. Overrule the Trustee's Objection to Proof of Claim No. 1 and allow the claim in full;

B. In the alternative, stay or continue the hearing on the Trustee's Objection and enter an Order granting Creditor leave to conduct a Rule 2004 Examination of the Debtor and compel the production of relevant financial documents; and

C. Grant such other and further relief as the Court deems just and proper.

Dated: 5/11/2026

Respectfully submitted,

Signed by:
Sherri L. Demerchant
249C86EDF7FF422...

SHERRI L. DEMERCHANT, *Creditor*
145 Ashby Road, Presque Isle, ME 04769
rsdemerchant@gmail.com

Docusign Envelope ID: 25F61B4E-B460-8E4C-81D1-3AD2C1EEAB8D



| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF MAINE**<br><br>**In re:**<br>**TERRY L. GREENIER, Debtor** | \| | **CHAPTER 7**<br>**CASE NO. 25-10013** |

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, a true and correct copy of the foregoing *Opposition of Creditor to Trustee's Objection to Proof of Claim and Alternative Request for Leave to Conduct Rule 2004 Examination* via email to Trustee Jeffrey T. Piampiano at trustee@dwmlaw.com, Debtor through his counsel, Christopher Leger, at cleger@kelleyleger.com, and Maine Bankruptcy Court via MEB_ECFmail@meb.uscourts.gov.

Respectfully,

Signed by:
Sherri L. Demerchant 5/11/2026
249C86EDF7FF422...

SHERRI L. DEMERCHANT, *Creditor*
145 Ashby Road, Presque Isle, ME 04769
rsdemerchant@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

**In re:**
**TERRY L. GREENIER, Debtor**

**CHAPTER 7**
**CASE NO. 25-10013**

**ORDER**

Upon consideration of the Chapter 7 Trustee's Objection to Proof of Claim No. 1 filed by Sherri Demerchant ("Creditor"), the Opposition thereto, and the record in this case, it is hereby ORDERED that:

[___ ] The Trustee's Objection is OVERRULED, and Proof of Claim No. 1 is allowed as filed.

**OR**

[ ___] The hearing on the Trustee's Objection is CONTINUED to ____________________ at _________. Creditor's alternative request to conduct a Rule 2004 examination is GRANTED. Creditor shall request relevant business documents and financial records from Debtor Terry Greenier, and Debtor shall produce same to Creditor's counsel at least ten (10) days prior to appearing for an examination under oath, which shall occur at a mutually agreeable time and location within sixty (60) days of the date of this Order.

Dated: ___________

_________________________________
**JUDGE MICHAEL A. FAGONE**
United States Bankruptcy Court
District of Maine